IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CROSS LANES VETERINARIANS
REAL PROPERTY LLC,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:12-cv-08084

HUNTINGTON BANCSHARES
INCORPORATED, et al.,

                Defendants.

**MEMORANDUM OPINION AND REMAND ORDER**

Pending are Defendant Michelle L. Chapman's motion to dismiss [ECF 7], Plaintiff Cross Lanes Veterinarian Real Property LLC's ("Cross Lanes") motion to remand and for costs [ECF 9] and motion for extension of time to serve the summons and Complaint [ECF 18].   For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Cross Lanes' motion to remand [ECF 9].

As this Court has recently observed, when a motion to remand and a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss are both made, "it is ordinarily improper to resolve the Rule 12(b)(6) motion before deciding the motion to remand."   *Powell v. Bank of America, N.A.*, 842 F. Supp. 2d 966, 968 (S.D. W. Va. 2012) (Copenhaver, J.).   "The question arising on the motion to remand as to whether there has been a fraudulent joinder is a jurisdictional inquiry."   *Id.* (citing

*Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3rd Cir. 1992); *cf. Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir.1999) (observing that the propriety of removal and fraudulent joinder are jurisdictional questions)).

## I. BACKGROUND

Plaintiff Cross Lanes filed its Complaint in the Circuit Court of Kanawha County, West Virginia in October 2012. (ECF 18–1.) According to the Complaint, Cross Lanes entered into a loan agreement with "the defendants". (ECF 18–1 at 3.) The Complaint names three Defendants: Huntington Bancshares Incorporated and Huntington National Bank, two Maryland corporations licensed to do business in West Virginia; and Michelle Chapman, a West Virginia resident.[1]

The Complaint alleges that the loan agreement stated that a variable rate of interest would be charged. (*Id.*) "Defendants" are alleged to have intentionally misrepresented Cross Lanes' account balance, as well as the amount it owed and paid on its loan. (*Id.*) The Complaint further alleges that Defendants overcharged interest on the loan. (*Id.*) After "a number of years" Cross Lanes discovered that "the defendant" was charging a fixed rate of interest instead of a lower variable rate as dictated by the loan agreement. (*Id.*) On May 16, 2011, Defendant Michelle Chapman allegedly informed Cross Lanes that the loan was a fixed rate loan. Cross Lanes alleges that the "defendant" continued to charge and collect 7.170 per cent fixed rate interest rather than the 2.25 percent variable rate provided for by the loan agreement. (*Id.* at 4.) The "defendants" are alleged to have used "fraud, deception, concealment, suppression and omission of material

---

[1] The Complaint alleges that Ms. Chapman was the "agent" of Defendants. In the parties' memoranda, it appears that Ms. Chapman was the bank official who assisted Cross Lanes in obtaining its loan in 2007.

facts with [the] intent that the plaintiff would rely upon the same in connection with repayment of the loan agreement." (*Id.*)

Count I alleges conversion against an unspecified, singular "defendant". Count II alleges breach of contract and states that on May 16, 2011, the "defendants by and through their agent, Michelle L. Chapman, informed the plaintiff that the subject loan was not a variable rate loan but was in fact a fixed rate loan." (*Id.* at 5.) Count II recites a provision from the loan contract that Plaintiff contends proves that the loan was a variable and not a fixed rate loan. (*Id.*) Count III alleges fraud against a singular, unspecified defendant "by and through its agents, including but not limited to Michelle L. Chapman. . . ." (*Id.* at 7.) The fraudulent statement appears to be the May 16, 2011, statement to Cross Lanes by Ms. Chapman as alleged in Count II. Count III alleges that "defendant" continued to collect payments in excess of what was required by the loan agreement and "threatened to and in fact did place the plaintiff in default" on the loan. Count IV, the final count, alleges that "the defendants" violated the provisions of the West Virginia Consumer Credit Protection Act by charging Cross Lanes fees it was not required to pay under the loan contract. (*Id.* at 8.) Cross Lanes seeks compensatory and punitive damages and attorney's fees and costs.

The Defendants timely removed this case from state court in late November 2012. (ECF 1.) Plaintiff Cross Lanes has moved to remand asserting that the nondiverse Defendant, Ms. Chapman, defeats complete diversity between Cross Lanes and the Defendants and, thus, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332. Defendants responded in opposition to Cross Lanes' motion to remand contending that Ms. Chapman was fraudulently

3

joined solely for the purpose of attempting to defeat this Court's exercise of diversity jurisdiction. Cross Lanes filed a reply to Defendants' response. This matter is now ripe for disposition.

## II. MOTION TO REMAND

### A.     Legal Standard

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). A defendant claiming fraudulent joinder bears a "heavy burden." *Id.* at 464. To establish fraudulent joinder of a nondiverse defendant, "the removing party must establish either: [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). This standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). To succeed, "'the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.'" *Mayes*, 198 F.3d at 464 (quoting *Marshall*, 6 F.3d at 232–33)).

Fraudulent joinder claims are subject to a "black-and-white analysis" and any shades of gray are resolved in favor of remand. *Powell*, 842 F. Supp.2d at 972 (citing *Hartley*, 187 F.3d at 425). The jurisdiction inquiry ends and the case must be remanded once a plaintiff shows a "glimmer of hope"." *Hartley*, 187 F.3d at 425. In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the

4

entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464 (internal quotations omitted).

      *B.*      *Claims against Michelle L. Chapman, the nondiverse Defendant*

As noted above, the Complaint fails to differentiate amongst the three Defendants in the Complaint. It appears, however, from a close reading of the Complaint and from Cross Lanes' memoranda that the only claim asserted against Defendant Chapman is the fraud claim alleged in Count III.

For example, Count I, the conversion count, is alleged against a singular, unspecified Defendant. It is plain from the language of Count I, however, that Cross Lanes has not alleged this Count against Ms. Chapman. Rather, Count I takes direct aim at the institutional bank Defendants by alleging that "defendant" charged Plaintiff "more interest than it was contractually entitled to under the subject loan agreement." (ECF 18–1 at 4.)

Similarly, Count II, the breach of contract claim, does not allege that Ms. Chapman—who is not alleged to be a signatory to the agreement—breached the contract; rather, Count II states that on or about May 16, 2011, "the defendants by and through their agent, Michelle L. Chapman, informed the plaintiff that the subject loan was not a variable rate loan but was in fact a fixed rate loan." (*Id.* at 5.) Count II states that because "the defendant failed to reduce the interest rate as it was required to do, based on the contract language, the plaintiff was required to pay over and above the requirements of the contract and as a proximate cause of the defendants' conduct plaintiff was damaged." (*Id.*)

Likewise, Count IV, the statutory consumer credit claim, states that the "acts and conduct of the defendants, acting in the manner and method as aforesaid" violated the West Virginia Consumer Credit Protection Act by overcharging for interest under the loan agreement.   (*Id.* at 8.)

Importantly, in its motion to remand Cross Lanes' entire theory for remand is rooted in its fraud count (Count III).   Plaintiff states in its motion to remand that there is a "glimmer of hope" for recovery because "the current substantive law of West Virginia . . . permits recovery against a party that engages in fraudulent conduct."   (ECF 10 at 9.)   It then cites West Virginia case law outlining the elements of a fraud action.   In its motion to remand, Plaintiff claims that Defendant Chapman "[a]s an inducement to obtain and close the sale of the loan" sold Cross Lanes a variable rate loan.   (*Id.* at 10.)   Nowhere in the motion to remand does Cross Lanes argue any theory of liability against Ms. Chapman other than fraud.   Even in its reply to Defendant's response to the motion to remand, Cross Lanes fails to rebut Defendants' assertions that the only count alleged against Ms. Chapman is the fraud count.   Accordingly, the Court construes Cross Lanes' Complaint as alleging a sole count, Count III, against Defendant Chapman.

> C.   *Defendants fail to carry their heavy burden in showing that there is no possibility that Cross Lanes can recover on their fraud claim under West Virginia law*

Having ascertained that the only claim alleged against Defendant Chapman is the fraud claim, the Court must now determine whether Defendants have carried their heavy burden and have shown that there is "no possibility" that Cross Lanes may recover under West Virginia state law against Defendant Chapman on this claim.   As discussed below, Defendants have failed to convince the Court that there is "no glimmer of hope" that Plaintiff could recover on its fraud claim against Ms. Chapman.   Thus, this case must be remanded to state court.

6

As stated in its Complaint, Cross Lanes' theory of liability is that: (1) in 2007, Cross Lanes entered into a loan agreement with the institutional Defendants; (2) the loan agreement states that the loan was a variable rate loan; (3) on May 16, 2011, Ms. Chapman told Cross Lanes that the loan was a fixed rate loan; (4) Defendants threatened to place, and did place, Cross Lanes in default; (4) Cross Lanes detrimentally relied upon the representations of Defendants and their agents in requiring Cross Lanes to make payments it was not contractually obligated to make; and (5) Defendants' misrepresentations proximately caused Cross Lanes damages. As stated, Cross Lanes' theory of fraud appears to be of a bait-and-switch variety. That is, Defendants made a promise (that the interest rate would be a variable rate and not a fixed rate) with no intention at that time to later fulfill such promise.

Under West Virginia law, in order to establish a claim for fraud, a plaintiff must allege: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; (3) that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) that he was damaged because he relied upon it. Syl. pt. 2, *Jennings v. Farmers Mut. Ins. Co.*, 687 S.E.2d 574, 575 (2009) (quoting Syl. pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (1981) (citations altered and omitted)). "Fraud cannot be predicated on a promise not performed. To make it available there must be a false assertion in regard to some *existing* matter by which a party is induced to part with his money or property." Syl. Pt. 3, *Croston v. Emax Oil Co.*, 464 S.E.2d 728 (1995).

At this juncture, the Court is mindful that all factual allegations must be evaluated in the light most favorable to Cross Lanes. Also, the Court must also resolve all contested issues of fact and uncertainties in West Virginia law in Cross Lanes' favor. In this case, Cross Lanes' fraud

7

theory cannot be predicated on the notion that the bank Defendants failed to perform a promise set forth in the contract. Such failure is not fraud, but rather a breach of contract. But here, Cross Lanes' fraud theory is that (1) Defendant Chapman's 2011 representation that the loan was a fixed rate loan was fraudulent, false, and material; (2) Cross Lanes relied upon Ms. Chapman's representation and was justified under the circumstances in relying upon it; and (3) Cross Lanes made payments based on the fixed rate and such payments were greater than required under the loan agreement.

Construed in the light most favorable to Cross Lanes, the Court cannot find that there is "no possibility" that Cross Lanes can recover against Defendant Chapman on the fraud claim. There is no dispute that Cross Lanes can satisfy the first element of proof of their fraud claim. More specifically, there is no dispute that the act claimed to be fraudulent—namely Ms. Chapman's 2011 statement that the loan was a fixed rate loan—was an act of the Defendants. Defendants, however, urge this Court to find that Cross Lanes cannot satisfy the second element proof, that is, that this statement was false. Defendants contend that loan was, in fact, a fixed rate loan and urge this Court to examine the loan agreement, which was attached to Defendants' notice of removal and is part of the record.[2] (ECF 1–2 at 72–74.)

---

[2] The promissory note is just over two pages long. It is a form loan contract. Near the top of the first page the principal amount of the loan is stated as "$1,200,000.00". On the same line the "Initial Rate" is noted as "6.750%". The first full paragraph bears the heading "Promise to Pay". There, Cross Lanes promises to repay Defendant Huntington National Bank $1.2 million with interest. This provision states as follows:

> PAYMENT: Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 9 monthly consecutive interest payments, beginning November 15, 2007, with interest calculated on the unpaid principal balances at an interest rate based on the Lender's Prime Commercial Rate. As used herein, Prime Commercial Rate shall mean the rate established by the Lender from time to time based on its consideration of economic, money market, business and competitive factors, and it is not necessarily the Lender's most favored rate. Subject to any maximum or minimum interest rate limitation specified herein or by applicable law, any variable rate of interest on the obligation evidenced hereby shall change automatically without notice to the undersigned immediately with

The Court has examined the loan contract. At this nascent juncture, the Court cannot make the finding that a West Virginia court would decide that Defendant Chapman's statement was not false. If this Court were deciding the issue on summary judgment with the benefit of full

---

> each change in the Prime Commercial Rate (currently 7.750%), plus a margin of -1.000 percentage points, resulting in an initial interest rate of 6.750%; 59 monthly consecutive principal and interest payments in the initial amount of $11,020.60 each, beginning August 15, 2008, with interest calculated on the unpaid principal balances at an interest rate of 7.170% per annum; and one principal and interest payment of $940,926.72 on July 15, 2013, with interest calculated on the unpaid principal balances at an interest rate of 7.170% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis: that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

(ECF 1–2 at 72.)

The third paragraph of the promissory note provides:

> VARIABLE INTEREST RATE: The interest rate on this Note is subject to change from time to time based on changes in an index which is the Lender's Prime Commercial Rate. As used herein, Prime Commercial Rate shall mean the rate established by the Lender from time to time based on its consideration of economic, money market, business and competitive factors, and it is not necessarily the Lender's most favored rate. Subject to any maximum and minimum interest rate limitation specified herein or by applicable law, any variable rate of interest on the obligation evidenced hereby shall change automatically without notice to the undersigned immediately with each change in the Prime Commercial Rate (the "Index"). The Index is not necessarily the lowest rate changed by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 7.750% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

*Id.*

9

development of the facts, it may very well be able to make such a weighty determination. But here, the Court knows little about the circumstances in which the alleged false statement was made, not to mention the circumstances that might support the third element of proof, whether Cross Lanes justifiably relied on Defendant Chapman's statement.

Defendants also argue that under West Virginia state law tort claims must arise independently from a contract and cite an unpublished order from the Northern District of West Virginia, *CWS Trucking, Inc. v. Welltech Eastern, Inc.*, Civil Action No. 2:04 CV 84, (N.D. W. Va. Sept. 29, 2006), in support of their position. (ECF 13–1.)

As noted in the order in *CWS Trucking*, there is authority in West Virginia case law for the principle that actions in tort for an alleged breach of a contractual duty are not legally viable. *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619, 624 (2002). *Lockhart* was a wrongful death action against a heating contractor, Airco, who was alleged to have negligently caused the homeowner to catch pneumonia and die during the installation of a new heating system. *Id.* The homeowner had chronic lung problems that required daily medication and supplemental oxygen. *Id.* at n.1. The Supreme Court of Appeals of West Virginia affirmed the circuit court's award of summary judgment to the contractor. The supreme court found that the contractor had no duty in tort to protect the homeowner from temperature fluctuations that might occur in the home during the heat pump installation process. The plaintiff contended that the parties' contract imposed such a duty. In response to that argument, the supreme court stated

> [E]ven if Airco contractually agreed to take precautions to avoid causing any harm to Mr. Lockhart's health, Mrs. Lockhart cannot maintain an action in tort for an alleged breach of a contractual duty. This Court has held that "[i]n the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others." Stated another way,

> Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation. An action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract.
>
> 86 C.J.S. Torts § 4 (1997).
>
> Thus, "[a] tort, although growing out of a contract, must nevertheless possess all of the essential elements of tort." *Id.*

*Id.*

The Court cannot ascertain based on the authorities cited by Defendants that West Virginia law clearly and definitively forecloses the possibility that Defendant Chapman might have a legal duty in tort separate from the loan agreement, although at this preliminary stage it appears unlikely. Unlikeliness, however, is not the governing standard for fraudulent joinder analysis. Further confounding the Court's task is the fact that at this stage the Court knows little about the circumstances in which Ms. Chapman's statement was made or the relationship between Ms. Chapman and Cross Lanes. There may well be factual nuances that are presently unknown to the Court that may decide the issue one way or another. It may well be that Defendant's legal argument, in the end, will prevail. But in consideration of the standards that govern this Court's analysis, that is, whether Defendants have shown there is "no possibility" that Cross Lanes can prevail on its fraud claim, and where the West Virginia Supreme Court has not squarely decided this issue under factual circumstances similar to those presented here, the Court declines to decide such issues. Most appropriately, that is the province of the West Virginia courts. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424–25 (4th Cir. 1999) (reversing district court's denial of plaintiff's

motion to remand where no state law case had squarely held that plaintiff's claims were foreclosed). Ultimately, the West Virginia tribunals are most appropriately suited to resolve this question of state law. Accordingly, the Court **GRANTS IN PART** Cross Lanes' motion to remand and for costs.[3]

### D. *Cross Lanes' motion for costs*

Cross Lanes also moves for Defendants to be required to pay its costs as a result of removal. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Any such award is at the Court's discretion, and may be made whether or not removal was in bad faith. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). In *Martin v. Franklin Capitol Corp.*, 546 U.S. 132, 141 (2005), the Supreme Court held that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." The inquiry "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

A defendant has an objectively reasonable basis for seeking removal where there is some clear authority, even if outside the court's jurisdiction, which supports the removing party's

---

[3] Having determined that Cross Lanes' motion to remand is meritorious, the Court does not have subject matter jurisdiction because of the presence of a nondiverse defendant. As such, it is without jurisdiction to adjudicate Defendant Chapman's motion to dismiss and Cross Lanes' and motion for extension of time to serve the summons and Complaint.

position regarding the issue before the court. *See Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F.Supp.2d 1081, 1090 (D. Kan. 2006). However, where "[a] cursory examination of the applicable law would have revealed that the federal district court does not have jurisdiction over [a] case", removal is "ill-founded" and an award of reasonable attorney fees and costs is appropriate. *Husk v. E.I. Du Pont de Nemours & Co.*, 842 F.Supp. 895, 899 (S.D. W. Va. 1994) (Haden, C.J.).

Based on the Court's foregoing analysis, Defendant had an objectively reasonable argument that West Virginia law precluded Cross Lanes' recovery on its fraud claim. The fact that this Court determined that West Virginia law did not definitively support that proposition does not make Defendants' attempt to remove this case objectively unreasonable. Accordingly, Cross Lanes' motion to remand and for costs is **DENIED IN PART.**

### III. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Cross Lanes' motion to remand, and **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia for further proceedings.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 25, 2013

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE